The next case for argument this morning is 24-1365, CPC Patent Technologies v. Apple. Ms. Holcomb, is that how you pronounce it? Good morning. Please proceed. Good morning, Your Honors. Melissa Holcomb on behalf of CPC. May it please the Court. On page 25 of Apple's response brief, Apple asserts that you're arguing that FOSS does not teach using card data to define a memory location or determining if a memory location is unoccupied because FOSS defines a memory location based on an existing occupied account not receiving card information. But Apple argues that you forfeited that challenge because at the PTAB you made different arguments about FOSS. Where in the record did you initially make that argument regarding FOSS that you're now making? Well, in looking at the Board's conclusions, they do combine... That's not what I'm asking. In our... So in our blue brief, we explain that either FOSS or Bradford utilizes existing, preexisting user accounts. And so either one of those scenarios are the same and that... You're still not answering my question, are you? Where in the record did you make that argument? I believe we made that argument and I will... Okay, you can do it when you get back up. Yes, yes. If I may, I will definitely have an answer for you on that. I think that the two main findings of the Board are the order of the claimed steps, which in their claim construction seems very straightforward and it follows the plain language of the claims. And that is namely receiving the card information first, using that card information to define a memory location where the biometric signature will be stored, and then storing that biometric signature at that location. So I guess I'm a little unclear. I understood your argument in the brief. You were complaining that the Board adopted a four-step order. And I can't find where the Board adopted a four-step order. The Board found that the card data must be received and used to define a memory location before the biometric data is stored in that location. But where's the four-step? So the four-step that they're referring to, and Apple refers to that in their red brief, I believe one of the last pages, maybe, I think, 21. The fourth step is... It's actually step two. It's receiving the biometric signature. So if we look at the language of the claims themselves, the first step identified as step A is receiving card information. The second is receiving the biometric signature, which is the fingerprint. And then C, which is arguably the most critical step, is the defining dependent upon the received card information, the memory location where that signature that had been received will be stored in the local memory. And then the following step, making sure that defined memory location is unoccupied and then storing the fingerprint there. And so this fourth step, which is receiving the biometric signature, it doesn't necessarily have to go in this particular order, although the claim certainly puts it after receiving the card information. We just need to have the fingerprint so that once the memory location is defined, you can store it there. And so in the board's claim construction, which I'd like to point out on appendix page 36 of their decision, they not only define the term defining, construe the term defining by using the terms... Which you haven't challenged on appeal. We are not challenging. And we believe that they were absolutely correct in their construction, in particular the interpretation. And so on appendix page 36 in that middle paragraph, you can see that there are two sentences. The first one starts with overall. If we just jump down to the second sentence, second part of that sentence, where it starts the enrollment process, the claimed biometric signature, e.g. the fingerprint, it's not yet stored in the memory. And this is the critical part that I think the board made a point to include. And no memory location or address has been defined, as in set or established, in the memory for storing the fingerprint until the card information is received. Then once that card information is received and the fingerprint's been received during enrollment, the card information provides the data that establishes where, i.e. at what memory address, that system will store the fingerprint. And there's a reason they included that statement, that until the card information is received, there is no memory location that's been set or established on where that biometric signature is going to be stored in this local memory. On the prior page, the QTAS notes that, I'm quoting, the Patent Owners' Council stated during oral argument with respect to defining that, quote, the only logical use of that term is that defining means to identify a memory location into which the biometric data is going to be stored. And Apples argues that you never addressed that concession. Where did you address that? Well, from the beginning, CPC has proposed the same construction, and that can be found in our Patent Owner Response on Appendix Page 253. And at that time, their patent owner noted that even though the court had construed the dependent upon term, that the way Apple was interpreting this defining limitation was different. And so at that point, CPC proposed two potential terms for defining, to set or establish, but more importantly, it was taking into context the order of the claims, the fact that that particular element used the word defining the memory location, and then after in the subsequent steps said the defined memory location, past tense, and the same occurred in Dependent Claim 2 during verification. And so we made it clear that although Apple had been suggesting the use of the term identify or find, their interpretation was that the memory location, even before the card information was received, it could have been predetermined or already defined prior to that card. And so there was some discussion at the hearing of alternative verbs for defining. And in reading the context of those discussions, they were all in response to either other verbs that Apple had proposed or suggested that we were proposing, and some words that were even brought up by the judge. I believe it was Judge Lange who noted that the Merriam-Webster Dictionary had the term create for the word defining. So there was discussion of alternative verbs. But CPC has always been clear, whatever verb is used for defining, the most important aspect is that at that moment, after the card information is received, that's when the memory location for the biometric signature that will be received is defined. It's set at that point. Whether you use the term set, establish, identify, create, although create did result in some confusion because there was a discussion about physically creating memory. Does it exist? Are you adding gigabytes at that point? Which seemed to be a little bit ridiculous as a discussion. So yes, there were discussions and counsel did use alternative verbs. What is it about these two references, Bradford and Foss, that explain to us that it has in fact defined the biometric data memory location when the player data record gets created? So Bradford, we can look at this. It's very explicit when that occurs. And it's on appendix page 1024, starting on column 3 at line 28 through 36. There's also another citation on 3030, column 15, line 60 through 63. Can you just read out loud something that tells me that when the player data record gets created, there's a spot right there for the subsequently received fingerprint data? Yes. A player identification database. I'm sorry, where are you? I'm right on column 3. This is appendix page 1024. Column 3, starting at line 28. A player identification database is also used where an entry corresponding to a player comprises at least one record, typically exactly one record. That record has fields containing data information or pointers. The records have fields corresponding to a first authenticator and a second authenticator, providing authenticator data therein or pointers to authenticator data. And this is the most important point. The second authenticator will always have data that corresponds to a biometric measurement. And so when that player goes to the customer service counter and to say, I need an account, and that attendant goes in and says, let me get a player ID account, and I'm going to start putting your, this is going to be you, I'm putting your name into it, that already has fields. And this tells us the fields are dedicated. It's predetermined that in that second authenticator field, their biometric signature is going to be stored in there. And after that, figure 6 shows us that after that point, while they're setting this up, the players then handed the card, the first authenticator card, which then they take to another machine, and at that point the card may retrieve their information so they can put their signature in. But that signature is going to go into their player ID database in that data field for the second authenticator. How do you understand the reference to pointers? The pointers, they, there's... That potentially makes the memory location somewhat indeterminate. Right. I agree with that. And if we read through some of the other areas in this patent, there are many other types of information that can be included. Social security numbers, there's information where they can pre-fill out forms for the IRS. And so those may have pointers or fields, but this is very clear that there is a first authenticator field and a second authenticator field, and in that second authenticator field will correspond to a biometric measurement. The biometric measurement goes in that field. What other fields are available in that account where they may add information, data to connect to a W-2 that could have the pointers, but the pointers are not in that field. For your time, let me just ask you, on Monday, I think we were all here together on Monday, and we heard this 24-1278 CPC uses Apple. Does the resolution of that case have any effect on this one? It does not. Thank you. We'll reserve the remainder of your time for rebuttal. You're back. Yes, I'll be back. May it please the Court. CPC's explicitly factual appeal cannot overcome the Board's well-supported findings based on repeatedly crediting the opinions of Apple's expert, Dr. Sears, and the Court should affirm. I think as the conversation has shown this morning, the parties agree about the starting point of the analysis here, which is the Board's unchallenged claim construction, and the Board went to great lengths to explain what that construction does and does not require. Well, what if the other side is right, that when you look at this prior art reference, is this Bradford at column three, that the best understanding of that column is that when the player data record gets created, it has a specified memory location for biometric data. And then if that is true, then how can it be said that when subsequent card information is provided, that that card information is going to define the memory location if the memory location has already been defined up front? Sorry, I wasn't sure if the question was that. I think answering that question comes down to what we mean by the word defined, and that's why the Board, I think, went to great lengths, because it understood that these terms define, set, establish, even identify and be susceptible to multiple meanings. And so the Board's construction was not just to replace the word define with another word. The Board said repeatedly that it was construing the entire claim phrase in the context of the claims as a whole, and what it requires, what the Board understood it to require, is that when the system receives the fingerprint and the card data, that data on the card tells the system where to store the fingerprint. It establishes where to store the fingerprint. And so under that construction, in Bradford and Foss, when they're at the gaming device, the system does not know. There may be thousands of these what counsel called predefined user entries in the database, and the system does not know which of those is the one to use for storing the fingerprint that was just scanned. And in the combination, what the Board found is the way it would work is you would scan the user's card, and the data on the card would tell the system, use entry 3,271. That's the entry to use. That's where to store this fingerprint data. And the Board reasonably found that that was within the scope of the claims. And I think the other piece of the Board's construction, which counsel did not talk about, was that the Board was express. Just to make sure I'm following you, I hate to use the word allocate, but you're saying that even if Bradford has pre-allocated a particular data field for where biometric data will be stored for a particular player, and it doesn't matter because when the card eventually gets swiped and the biometric data gets received, the card data is going to somehow guide and channel where that data goes and help that biometric data arrive at the pre-defined, pre-allocated data field? I wouldn't say pre-defined just for the reason you said, but otherwise, yes. That was the Board's understanding of the claims, and the Board left no ambiguity about that, Judge Chen, because at Appendix 37, the Board said its understanding of the claims does not exclude an existing user entry in the database as the location for storing the fingerprint data. Obviously, that's unchallenged on appeal. We heard that just now. But it's also consistent with what the patent, to the extent that the O3-9 patent really explains what this limitation is about. It describes in Column 7 that the card data acts as a memory reference and points to a location in memory where this will be stored, and that's illustrated in Figure 4 of the patent, where there's an arrow pointing from card data to a pre-existing memory location in a database. And then the patent in Column 8 explains that the benefit of this is that later on, when you want to verify a user's fingerprint, the system doesn't need to go search an entire database to find whether there's a matching fingerprint. You swipe the card again, and it looks up the card data and just checks the location that corresponds to that card data. And that's exactly what the Prior Art System here does as well. Your friend on the other side doesn't discuss an oral argument, but does in the blue brief, your expert. And since it may come up in rebuttal, tell me why your expert is correct in their conclusion. In which conclusion? In which conclusion? That a person of ordinary skill would obviously combine these two. Yeah, so that, I think, as maybe your question recognizes, the other side has not challenged motivation to combine or reasonable expectation of success. And for good reason, the board found that both Bradford and FOSS are directed at this issue of you already have an entry in a database that has some information about a user, and now you want to add more information to the database about that user. How are you going to do that? And the board recognized that Bradford is never expressed about how to do that, but FOSS is, and FOSS says that what our expert, and his testimony is at Appendix 981, among other places, that it was well known that it was a fast, easy, reliable way to use an existing user ID card, swipe the card, use the data from the magnetic strip to identify the existing user entry in the database and then store more information there. And the board found that that both would have motivated this combination and would have led to reasonable expectation of success in arriving at exactly what is claimed here. I think that to the other side's arguments about order, what the board recognized is that to the extent there's an order here, the fingerprint is not yet stored in memory during the enrollment phase. Then you receive card data and the fingerprint, and then the card data tells the system where to store the fingerprint. That's the requirement, and the board repeated about five times that the card data establishes where to store the fingerprint. Each time the board did that, and I think this maybe goes to the allocate question, Judge Chun, the board emphasized the words where and store. What's being established is not the memory location kind of ab initio, not allocation. It's establishing where to store the fingerprint data. That is the board's unchallenged claim construction, and the board reasonably found under the substantial evidence here that the prior art discloses that. Unless the court has any further questions, we'd ask that you affirm. Thank you. May it please the court? So, Judge Wallach, I just wanted to respond to your initial question. Were you asking about in the record below? Yes. Yes. So on appendix page 255, we state that FOSS does not cure the deficiencies of Bradford in failing to teach this limitation. Notably, FOSS does not teach enrolling a single user account by utilizing received card information to define a memory location. Instead, FOSS is directed towards expanding an existing user account, which petitioner references in its petition. Portions of FOSS quoted, and we end up quoting some language from there. And then, quickly, I wanted to address something that my friend said about using the card data in suggesting that Bradford or FOSS could, once that card data is received, to somehow change where that biometric signature will be stored, and there's no evidence of that. And it's very clear, Bradford is explicitly clear, which data field that biometric signature is going to be stored. And he also mentioned figure four in the patent, which talks about pointing to a memory location. And figure four is an early figure. It actually is titled as the concept. And we can read in column seven on appendix 75, starting at line 34, it describes figure four, this concept of the system and the method, and it doesn't start to describe what is the initial enrollment phase and then the verification phase until just below that. I'm sorry, you're out of time, but could you just respond quickly to opposing counsel's argument that because the card information will tell the system where to store the fingerprint data, that's all that is required under the unchallenged claim construction? Apple does this multiple times in their brief. They do it on page one. Just tell me the answer. The answer is that they are ignoring the statement that we looked at earlier, which before the card information is received, there's no memory defined and where that biometric signature will be stored. Right, their point is that doesn't matter. All that matters is under the claim construction, is there something in that card information that's going to direct the system where to store the data? The fact that that particular memory location may have already been preallocated for storing that data once that data is ever received is beside the point in their view. Their view is once the system reads the card data, the card data is going to tell the system where to store the fingerprint data, and that's good enough under the unchallenged claim construction. Your Honor, we would disagree with that. What he's explaining and how he's interpreting this claim is that in that scenario, the card is swiped and it is pointing to a location that's already been predefined, and the card isn't actually defining it. It's not dependent upon the card information to define that memory location, and that is what happens in our claim two, where the user's already enrolled in this verification system and there's already a biometric signature, and whether it's there or not, that isn't the point. The point is in the enrollment in this claim, that card information is the thing that defines where the signature is going to be stored. It cannot have already a spot waiting to receive it. It's the card information, and this patent will automatically allow the user to enroll that, and it's based on the card data and dependent upon that received card data, which is different in Bradford. Bradford is the example he was using. It's already defined. They swipe the card. The card knows where it's going to go, but it's not doing the defining. Thank you. I'm set to thank both sides for cases today.